IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GEORGE JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-1013-JTM-GEB |
| | ) |
| AD ASTRA RECOVERY SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Stay this case (**ECF No. 13**). On May 24, 2016, the Court conducted an in-person hearing to discuss Defendant's motion. Plaintiff George Jones appeared through counsel, Bryce B. Bell. Defendant appeared through counsel, Kersten L. Holzhueter. After review of the parties' briefing and considering the arguments of counsel, Defendant's Motion to Stay is **DENIED** as explained below.

### Background[1]

**Claims**

Plaintiff filed his complaint as a putative class action, seeking damages for Defendant Ad Astra Recovery Services, Inc.'s ("Ad Astra") violations of the Telephone

---

[1] Unless otherwise indicated, the information recited in this section is taken from the pleadings (Pl.'s Compl., ECF No. 1; Def.'s Answer, ECF No. 9), from the briefs regarding Defendant's Motion to Stay (ECF Nos. 13, 14, 15, 19, 20), and from the ruling in *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015) (hereinafter "2015 FCC Ruling"). This background information should not be construed as judicial findings or factual determinations.

Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  Congress enacted the TCPA in 1991 in response to consumer complaints about unwanted telemarketing calls.  Among other restrictions, the TCPA limits the use of non-emergency calls made by automatic telephone dialing systems ("ATDS") to recipients who have not consented.

Plaintiff alleges defendant Ad Astra, a debt recovery company, made repeated automated phone calls to his cellular phone using an ATDS.  He claims Defendant's calls were placed by an ATDS with "the capacity to store or produce telephone numbers to be dialed, using a random or sequential number generator."[2]  Plaintiff claims these calls were placed to him in error, because he was not the intended recipient of the calls and they were related to a debt owed by an individual whom he does not know.  Plaintiff also claims although he informed the caller on multiple occasions he was not the person sought, Defendant continued to call him, and these calls interfered with his occupation as a truck driver.  Plaintiff contends he never provided his cellular phone number to Defendant and therefore Defendant lacked consent to place the calls.  Plaintiff also proposes to certify a class of plaintiffs, to include all persons within the United States who received any ATDS calls on their cellular telephone from Defendant without their prior express consent.  Defendant denies liability.

---

[2] Compl., ECF No. 1. at ¶¶ 18-19.

**FCC Ruling**

Relevant to the issues before this Court and prior to the filing of this case, on July 10, 2015, the Federal Communications Commission ("FCC") issued a "Declaratory Ruling and Order" which "resolved 21 separate requests for clarification or other action regarding the TCPA . . . ."[3] To simplify the TCPA relative to the issues before it, the FCC summarized the law as follows:

> If a caller uses an autodialer or prerecorded message to make a non-emergency call to a wireless phone, the caller must have obtained the consumer's prior express consent or face liability for violating the TCPA.[4]

Three issues discussed by the FCC in its 2015 Ruling are pertinent to this case: 1) capacity of a dialing system; 2) definition of "called party;" and 3) the "safe harbor" established for callers who either call an incorrect or reassigned number.

1. Capacity

Among other issues addressed by the FCC, the 2015 Ruling specifically addressed the issue of "capacity" by first discussing its previous rulings on the topic. In 2003, the FCC determined to be classified as an ATDS, a dialing system need only have the "capacity" to store or produce telephone numbers, even if only dialing a fixed set of numbers. In 2008, the FCC affirmed its 2003 order.[5] Addressing the recent petitions before it regarding the "capacity" issue, the 2015 Ruling found the TCPA's definition of capacity "does not exempt equipment that lacks the 'present ability' to dial randomly or

---

[3] 2015 FCC Ruling, 30 F.C.C. Rcd. at 7964 (also attached to Def.'s Mem., ECF 14, Ex. 1).
[4] *Id*. at 7971.
[5] *Id*. at 7972-73.

sequentially" and "any equipment that has the requisite 'capacity' is an autodialer . . . subject to the TCPA."[6]

### 2. Called Party

In response to the petitions before it, the FCC also addressed the topic of reassigned wireless telephone numbers and the meaning of "called party" to determine whether a called party is the intended recipient of the call, or the current subscriber of the wireless phone. Finding the term "called party" ambiguous under the statute, the FCC defined the called party as "the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call."[7]

### 3. Safe harbor

In order to address the concerns regarding the difficulties learning of reassigned numbers after they occur, the FCC created a "safe harbor" to provide callers an opportunity to discover the reassignment:

> Callers are liable for robocalls to reassigned wireless numbers when the current subscriber to or customary user of the number has not consented, subject to a limited, one-call exception for cases in which the caller does not have actual or constructive knowledge of the reassignment.[8]

The FCC acknowledged the inherent difficulties in discovering reassigned wireless numbers:

---

[6] *Id*. at 7974.
[7] *Id*. at 8000-01. The FCC also included in the definition "or the non-subscriber customary user of a telephone number included in a family or business calling plan. Both such individuals can give prior express consent to be called at that number." *Id*.
[8] *Id*. at 7965.

4

> Even where the caller is taking ongoing steps reasonably designed to discover reassignments and to cease calls, we recognize that these steps may not solve the problem in its entirety. In balancing the caller's interest in having an opportunity to learn of reassignment against the privacy interests of consumers to whom the number is reassigned, we find that, where a caller believes he has consent to make a call and does not discover that a wireless number had been reassigned prior to making or initiating a call to that number for the first time after reassignment, liability should not attach for that first call, but the caller is liable for any calls thereafter.[9]

However, the FCC did not extend this one-call safe harbor to "misdialed calls [or] calls where the number is entered incorrectly into a dialing system," finding that "the caller never had valid prior express consent from the subscriber or customary user to make any call to that misdialed or incorrectly-entered phone number."[10]

**Current Status of FCC Ruling**

Under the Hobbs Act, 28 U.S.C. § 2342(1), the federal Courts of Appeals have exclusive jurisdiction over final orders issued by the FCC.[11]  Following the 2015 FCC Ruling, approximately ten petitions for review were filed in several federal appellate courts, seeking review of various pieces of the ruling.  Those petitions have been consolidated before the District of Columbia Circuit Court of Appeals.[12]  Briefing on the petitions is complete, but the Circuit has yet to schedule oral argument.[13]  Despite the

---

[9] *Id*. at 8007-08.
[10] *Id*. at 8000 n.262
[11] *Council Tree Inv'rs, Inc. v. F.C.C.*, 739 F.3d 544, 551 (10th Cir. 2014) (citing *Minority Television Project, Inc. v. FCC,* 736 F.3d 1192, 1211 (9th Cir. 2013) (en banc)).
[12] *See ACA International, et al. v. Federal Communications Commission*, Case No. 15-1211, at ECF Nos. 1562836, 1565258, 1568219, 1570903, 1571305, 1571466, 1571884, 1572095 (D.C. Cir.).
[13] *Id*.

pending appeals, because "Congress has entrusted the implementation and interpretation of the TCPA to the FCC,"[14] the FCC's ruling presently has full legal authority.

**Issues**

The parties agree Plaintiff's claims involve subjects which were addressed in the 2015 FCC Ruling and are now being reviewed by the D.C. Circuit.[15]  Plaintiff claims Defendant called the wrong number—Plaintiff's cellular number—without permission, on multiple occasions, using an ATDS.  Therefore, the salient issues in this case are: 1) what constitutes an autodialer (ATDS) under the TCPA and whether Defendant's calling method was, in fact, an autodialer; 2) the definition of "called party" under the TCPA; and 3) the scope of the safe harbor exemption from liability for calls to the wrong person.

### Discussion

Citing the pending review of the FCC's ruling by the D.C. Circuit, Defendant requests an indefinite stay of this case to allow the Court to benefit from the D.C. Circuit ruling, arguing a ruling on any of the issues described above could be dispositive of this case.  Defendant contends the fact that the FCC ruling is being appealed by multiple parties highlights the need for a stay, and staying the case will conserve judicial and party resources and potentially simplify the issues.  Defendant cites to other courts which have

---

[14] *Higgingbotham v. Hollins*, No. 14-CV-2087-JTM-TJJ, 2014 WL 2865730, at *2 (D. Kan. June 24, 2014) (citing *Charvat v.EchoStar Satellite, LLC,* 630 F.3d 459, 466–67 (6th Cir.2010)).
[15] *See* Def.'s Mem., ECF No. 14 at 4; Pl.'s Resp., ECF No. 19 at 2.

stayed similar cases pending the outcome of the D.C. Circuit ruling.[16] At hearing, Defendant suggested the Court bifurcate discovery, allowing discovery on class certification issues to proceed but staying merits discovery until after the D. C. Circuit ruling.

Plaintiff agrees the FCC, and now the D. C. Circuit, is the proper entity to make the decisions regarding what constitutes an ATDS or called party. But Plaintiff argues the timing of a future decision by the Circuit is indefinite, and is "far too speculative to warrant a stay" of this case. Furthermore, he contends the issues of "called party" and "ATDS" under review by the D.C. Circuit have already been adjudicated, not only by the FCC but by other courts across the country, and is, as it stands, good law.[17]

Plaintiff asserts even if the Circuit extends the "safe harbor" rule beyond the current one-call limit, this would not affect his claim, because Defendant called his cellular telephone multiple times and was given actual notice on each occasion Plaintiff was not the intended recipient. Plaintiff argues this logic applies not only to himself, but

---

[16] *See* Def.'s Mem., ECF No. 14 at 7 (citing *Fontes v. Time Warner Cable, Inc.*, No. CV14-2060-CAS(CWx), 2015 WL 9272790 (C.D. Cal. Dec. 17, 2015); *Gensel v. Performant Tech., Inc.*, No. 13-C-1196, 2015 WL 6158072 (E.D. Wis. Oct. 20, 2015); *Jimenez v. Credit One*, No. 1:15-cv-13309-FDS, ECF No. 22 (D. Mass. Jan. 29, 2016)).

[17] Pl.'s Resp., ECF No. 19, at 7-9 (citing, with regard to "called party", *e.g., Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. June 9, 2014); with regard to the definition of "ATDS", e.g., *See In the Matters & Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC LEXIS 3673, 18 F.C.C.R. 14014 (Fed. Commc'n Cmm'n July 3, 2003); *Lardner v. Diversified Consultants, Inc.,* 17 F. Supp. 3d 1215 (S.D. Fla. 2014); *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F. 3d 1036, 1043 (9th Cir. 2012); *Swope v. Credit Mgmt., LP,* 2013 WL 607830, at *4 (E.D. Mo. Feb. 19, 2013).

also to the putative class of consumers who receive repeated autodialed calls from Defendant.

Plaintiff further contends he and the putative class will suffer harm from a stay, including loss of evidence from the passage of time. He argues the "issue is even more critical in the context of a class action in which, due to the high volume of individuals involved, many will become more difficult to notify or be in a position to receive the benefits of the action, due to lapse of time." Plaintiff also claims the burden of potential loss of class members and evidence weighs heavier than Defendant's speculation. He cites to multiple courts throughout the country which have denied similar requests to stay pending the D. C. Circuit ruling.[18]

At hearing, Plaintiff responded to Defendant's request to bifurcate discovery by noting the parties are currently engaged in written discovery. Furthermore, Plaintiff argued it is difficult to separate class discovery from merits-based discovery, and Plaintiff cannot succeed in certifying the potential class without showing his potential to prevail on the merits.

---

[18] *Byrd v. Equinox Holdings*, No. 14-cv-08226-MFW-JC, ECF No. 36 (C.D. Cal. Aug. 10, 2015); *Leachman v. Discover Financial Services, LLC*, 15-cv-62120-PAS, ECF No. 19 (S.D. Fl. Jan. 13, 2016) (finding, in part, "ln light of the disputed relevance of the FCC'S July 2015 Order, and the indeterminate timeline of its appellate review, Defendant's Motion to Stay pending appellate review of the FCC Order is denied"); *Gregory v. Diversified Consultants, Inc.*, No. 14-cv-1714-JLS-NLS, ECF No. 31 (S.D.Cal. Oct. 30, 2015) (finding a stay no longer warranted, and noting the Court now has the benefit of the FCC's expertise, despite the pending challenges); *Kafatos v. Uber Technologies, Inc.*, No. 15-cv-03727-JST, ECF No. 40 (N.D. Cal. Jan. 8, 2016) (finding, that although the D. C. Circuit decision "could be beneficial to this action by clarifying certain questions of law, the parties still require discovery on a number of factual issues regardless of the outcome of those cases. Uber has not shown this is one of the "rare circumstances" in which a stay pending the resolution of an appeal in another case is appropriate."); and *Lathrop v. Uber Technologies, Inc.*, 14-cv-05678-JST, ECF No. 112 (N.D.Cal. Jan. 8, 2016).

**Legal Standard**

Whether to stay litigation is within the Court's inherent power to control its docket and rests in its sound discretion.[19] The Court may exercise that power in the interest of economy of time and effort for itself and for counsel and parties appearing before it.[20] In discharging its discretion, the Court must weigh competing interests and maintain an even balance."[21] "The party requesting the stay "must make a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."[22] "The Tenth Circuit has cautioned that "[t]he right to proceed in court should not be denied except under the most extreme circumstances."[23] As explained below, the situation revealed by Defendant is in no way extreme.

**Analysis**

Each party presents non-binding authority generated by courts across the country, in support of, and against, indefinite stay of similar actions involving the TCPA pending the ruling by the Circuit. Cases involving similar claims have been filed in this District;[24]

---

[19] *Universal Premium Acceptance Corp. v. Oxford Bank & Trust,* No. 02–2448–KHV, 2002 WL 31898217, at *1 (D. Kan. Dec. 10, 2002) (citing *Pet Milk Co. v. Ritter,* 323 F.2d 586, 588 (10th Cir.1963)).
[20] *Id*. (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936)).
[21] *Pipeline Prods., Inc. v. Horsepower Entm't*, No. CV 15-4890-KHV-KGS, 2016 WL 1448483, at *1 (D. Kan. Apr. 13, 2016) (citing *Landis*, 299 U.S. at 255).
[22] *Landis*, 299 U.S. at 255.
[23] *Kendall State Bank v. Fleming*, No. 12-CV-2134-JWL-DJW, 2012 WL 3143866, at *2 (D. Kan. Aug. 1, 2012) (citing *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.,* 713 F.2d 1477, 1484 (10th Cir.1983)).
[24] *See, e.g., Higginbotham v. Hollins,* No. 14-2087-JTM-TJJ, 2014 WL 2865730, at *2 (D. Kan. June 24, 2014) (finding that a stay of that action was appropriate pending resolution of FCC

however, they were all filed prior to the 2015 FCC Ruling.  But neither party addresses case law from this Court which lifted a similar stay.

In *Lee v. Loandepot*,[25] the Court initially stayed the case in August 2014, on defendant's motion, until a decision could be rendered by the FCC, to avoid conflicting rulings on the interpretation of "capacity" as used in the TCPA.  But after the FCC issued its 2015 ruling, plaintiff sought to lift the stay.  This Court granted that motion, finding:

> . . . because the FCC has now ruled on the specific issue of "capacity," the first purpose of the stay has been satisfied.  Fed. R. Civ. P. 1 directs the court to ensure the just and speedy determination of this case; therefore, this case can proceed through the discovery process while the FCC appeal is being considered by the D. C. Circuit.  If the Circuit has not ruled before the case is prepared for dispositive motions or trial, the court could entertain another motion for stay at that time.  The court would then avoid a potentially conflicting decision, satisfying the second purpose of the stay.[26]

The Court found no prejudice to defendant by the case proceeding, "at least with scheduling and discovery, despite the pending appeal."

Furthermore, this Court (as do numerous others) looks to the standard set forth by the United States Supreme Court in *Landis v. N. Am. Co*.[27]  In that case, the high Court analyzed the power of the District of Columbia federal court to stay proceedings pending

---

proceedings); *Higgenbotham v. Diversified Consultants, Inc*., No. 13-2624-JTM-JPO, 2014 WL 1930885, at *3-4 (D. Kan. May 14, 2014) (granting defendant's motion to stay the case pending the FCC's decision).

[25] *Lee v. loanDepot.com, LLC*, No. 14-1084-MLB, 2014 WL 4145504, at *2 (D. Kan. Aug. 20, 2014).

[26] *Lee v. loanDepot.com, LLC*, No. 14-1084-MLB, 2015 WL 5032175, at *3 (D. Kan. August 25, 2015) (citing *Pimental v. Google, Inc*., 2012 WL 1458179, at *5 (N. D. Cal. Apr. 26, 2012) (finding that, to the extent the FCC may rule on issues pertinent to the district court case, there is no risk of inconsistent rulings because the FCC ruling should occur before the issues are presented to the Court or a jury.  Also noting a stay would not "permit the parties to obtain the discovery necessary to resolve the factual disputes Defendants raise in their Answer.")).

[27] 299 U.S. 248 (1936).

a decision by the Supreme Court from an appeal of a federal case in the Southern District of New York.  In its review of the stay order, the Court held "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[28]  Although the Court did not outline specific factors for courts to analyze, it found the party requesting a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."[29]  The stay was vacated and the case remanded to the D.C. District Court to determine the motion for stay after applying the principles set out in the Supreme Court's order.[30]

As in *Lee*, and to maintain consistency in its rulings, here the Court finds, in conjunction with the existence of the full legal authority of the 2015 FCC Ruling, solely defending a suit, without setting forth additional prejudice, "does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."[31]  Despite the D. C. Circuit's eventual ruling, it will still be necessary for the parties to obtain discovery on the facts of this case.  For example, fact discovery on the issues of whether an ATDS was used,  the

---

[28] *Id*. at 254.
[29] *Id*. at 255.
[30] *Id*. at 259.
[31] *Gregory v. Diversified Consultants, Inc.*, 14-cv-1714-JLS-NLS, ECF No. 31 (S.D.Cal. Oct. 30, 2015) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (quoting *Landis*, 299 U.S. at 255)).

identify and phone numbers of the called parties and whether they provided their consent, and the number of received called, will still be necessary.[32] Defendant even acknowledges "factual disputes may complicate the disposition of this case."[33] The potential that Defendant could engage in greater discovery, if the case is not stayed, does not constitute a "rare circumstance" which justifies an indefinite stay.[34] Therefore, the Court finds no "clear case of hardship or inequity"[35] to Defendant in this case proceeding, at least with scheduling and discovery, despite the pending appeal, and Defendant's motion to stay is **DENIED**.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Stay (**ECF No. 13**) is **DENIED**.

**IT IS FURTHER ORDERED** that, after consultation with the parties during the May 24, 201 hearing, a separate Scheduling Order will be entered simultaneously herein.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 6th day of June, 2016.

s/ Gwynne E. Birzer  
GWYNNE E. BIRZER  
United States Magistrate Judge

---

[32] *See, e.g.*, *Lathrop v. Uber*, No. 14-5678-JST, ECF No. 112 at 7-8 (N.D.Cal. Jan. 8, 2016) (finding "Uber may face additional discovery obligations but has not established that this hardship justifies staying the case, which would otherwise be delayed with no identifiable end to the stay.'); *see also Kafatos v. Uber Technologies, Inc.*, No. 15-cv-03727-JST, ECF No. 40, at 3 (N.D. Cal. Jan. 8, 2016) (citing *Landis*, 299 U.S. at 255) (noting "the parties still require discovery on a number of factual issues regardless of the outcome of those [D.C. Circuit] cases.")

[33] Def.'s Mem., ECF No. 14 at 8.

[34] *Kafatos*, No. 15-cv-03727-JST, ECF No. 40 (N.D. Cal. Jan. 8, 2016) (citing *Landis*, 299 U.S. at 255).

[35] *Landis*, 299 U.S. at 255.